IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BESTLAMINATE, INC., : | | |
| 3900 Ben Hur Avenue, #10 : | CASE NO. | |
| Willoughby, Ohio 44094 : | | |
| : | JUDGE | |
| Plaintiff, : | | |
| : | | |
| vs. : | | |
| : | | |
| SOFTWAREHUT, LLC, : | | |
| 40 Exchange Place, Suite 1602 : | **COMPLAINT** | |
| New York, NY 10005 : | | |
| : | | |
| Defendant. : | | |

Plaintiff BestLaminate, Inc. ("Plaintiff" or "BestLaminate"), by its undersigned counsel, for its Complaint against Defendant SoftwareHut, LLC ("Defendant" or "SoftwareHut"), states as follows:

**INTRODUCTION**

1. BestLaminate brings this case to recover the significant damages that it has incurred as a result of SoftwareHut's breaches of its contracts with BestLaminate and other misconduct concerning SoftwareHut's refusal and/or failure to complete work for BestLaminate in a satisfactory manner. BestLaminate entered into an agreement with SoftwareHut that SoftwareHut would update BestLaminate's e-commerce platform and website. Despite BestLaminate paying SoftwareHut a substantial amount of money for this work, SoftwareHut failed to meet these and other obligations under the agreement. Therefore, BestLaminate seeks to recover, *inter alia*, the payments it made to SoftwareHut pursuant to the aforementioned agreement, which SoftwareHut should not be allowed to keep under applicable law.

1

**PARTIES AND JURISDICTION**

2. BestLaminate is and at all relevant times has been an Ohio corporation with its principal place of business at 3900 Ben Hur Avenue, #10, Willoughby, Ohio 44094.

3. Upon information and belief, SoftwareHut is and at all relevant times has been a Delaware corporation with its principal place of business in New York.

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs. .

5. This Court has personal jurisdiction over SoftwareHut because the causes of action arise from SoftwareHut's transacting business in Ohio and/or its contracting to supply services or goods in Ohio; its purposeful availment of the privilege of conducting business in this forum; its ongoing and substantial communications into Ohio for purposes of negotiating and conducting business; its videoconferences with BestLaminate representatives in Ohio; its numerous agreements with BestLaminate that were negotiated, in whole or in part, in Ohio; and as a result of the general and specific contacts that SoftwareHut maintained in Ohio at all relevant times.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events and/or omissions giving rise to BestLaminate's claims emanated from activities within this jurisdiction.

**FACTUAL BACKGROUND**

**I.  The Parties Entered Into Binding Contracts for Software Hut to Provide Certain E-Commerce Services to BestLaminate.**

7. BestLaminate is a retailer of high-quality flooring and other materials for its customers.

8. SoftwareHut is a software development company.

2

9. On July 30, 2020, BestLaminate and Software Hut entered into a Master Service Agreement ("MSA") for SoftwareHut to provide certain services to BestLaminate, which services would be described in subsequent Statements of Work ("SOW"). A copy of the MSA is attached hereto as Exhibit 1.

10. In the MSA, the parties agreed that "[a]ll Deliverables provided by [SoftwareHut] to [BestLaminate] will be performed or provided in a timely, competent, professional, and workmanlike manner, using qualified Consultants."

11. The MSA further states that any dispute between the parties shall be governed by the laws of the State of Delaware.

12. On January 28, 2021, BestLaminate and SoftwareHut entered into a Statement of Work ("SOW 1") for SoftwareHut to migrate BestLaminate's "existing ecommerce platform from Magento 1 to Magento 2 and redesign the [website] storefront." A copy of the SOW 1 is attached hereto as Exhibit 2.

13. The SOW 1 said that "[a]ll the Services provided by [SoftwareHut's] Consultants shall follow generally admitted best practices in software development."

14. The SOW 1 further said that "[t]he following delivery practices shall be used: 1) Agile methodology, 2) Source code will be placed in Company's repository, [and] 3) System will be deployed according to the software release best practices."

15. The SOW 1 included a start date for the foregoing services of February 1, 2021, and SoftwareHut provided an estimated end date of its services, by which time SoftwareHut estimated that the work would be completed, by July 1, 2021.

16. On or around June 10, 2021, SoftwareHut's project manager for BestLaminate's work, Kamila Jasinska, confirmed the progress of SoftwareHut's work, and assured BestLaminate that the development work would be completed by July 15, 2021. Jasinska also assured

BestLaminate that there was no reason for BestLaminate to be concerned about the status of the project.

17. On or around June 28, 2021, Jasinska confirmed the completion date for at least part of the work for some time between July 12-16, 2021.

## II. SoftwareHut Refused to Complete its Work for BestLaminate, and Refused and/or Failed to Correct Errors in its Work for BestLaminate

18. On or around July 8, 2021, BestLaminate requested a meeting with SoftwareHut to discuss the progress of the migration, due to BestLaminate's concerns about the subpar quality of SoftwareHut's work and delays in the projected completion of the work.

19. On or around July 12, 2021, SoftwareHut issued two new SOWs to BestLaminate, requesting additional money and time to complete the work that SoftwareHut had said only a few weeks earlier was near completion.

20. BestLaminate refused both SOWs, and immediately requested a meeting with SoftwareHut's management to ask about SoftwareHut's delay, its refusal to complete the agreed-upon work, and the SOWs.

21. SoftwareHut did not complete its work as promised by July 16, 2021.

22. On or around July 16, 2021, BestLaminate's Marketing Director, Kasia Swierczek, and other representatives from BestLaminate spoke with SoftwareHut's Chief Executive Officer, Robert Strzelecki. At that time, Strzelecki agreed that SoftwareHut would complete BestLaminate's development project and migration at no additional cost to BestLaminate, consistent with the parties' MSA and SOW 1.

23. However, SoftwareHut's employees assigned to work on the BestLaminate project did not have the professional skills to continue and/or complete the work.

4

24. BestLaminate repeatedly communicated the problems in SoftwareHut's work - which included inferior quality of work, lack of professionalism, and lack of competency to deliver the final product - to SoftwareHut.

25. On or around July 27, 2021, BestLaminate asked SoftwareHut to schedule a call, as BestLaminate had some serious concerns about SoftwareHut's work and its team assigned to the work.

26. On or around July 28, 201, the parties conducted the requested call. During the call, BestLaminate requested that SoftwareHut replace its development team and project manager assigned to BestLaminate's work. SoftwareHut denied BestLaminate's request, but assured BestLaminate that it would make specific improvements to help with the progress of the project.

27. In August 2021, SoftwareHut continued to present to BestLaminate solutions to the problems that SoftwareHut had created, but the solutions did not work.

28. On September 6, 2021, SoftwareHut emailed BestLaminate and said that it had identified 41 tasks relating to bugs and errors in its work that needed to be resolved for the project to be completed. Still, SoftwareHut informed BestLaminate that it expected that it could resolve all of the issues within 3-4 weeks.

29. On or around September 14, 2021, BestLaminate discovered that SoftwareHut's errors had caused problems with at least one of BestLaminate's customers. BestLaminate notified SoftwareHut of the issue on September 14, 2021, in response to which SoftwareHut said that they would investigate the issue. To date, SoftwareHut has never informed BestLaminate of its conclusions from its alleged investigation.

30. BestLaminate continued to discover and report to SoftwareHut ongoing problems with SoftwareHut's work, including, but not limited to:

- Not fixing bugs in its work that SoftwareHut had reassured BestLaminate would be corrected;

- Delivering broken solutions;

- Lack of responsiveness to BestLaminate's requests and reported issues;

- Failure to migrate BestLaminate's e-commerce platform by any of the agreed-upon dates;

- Canceled meetings;

- Failure and/or refusal to produce required monthly progress reports after July 2021; and

- Failure and/or refusal to provide agreed-upon communications, updates, and quality of work.

31. On November 22, 2021, SoftwareHut expressly refused to complete the work for BestLaminate.

32. On November 23, 2021, SoftwareHut's developers notified BestLaminate about the completion of development, and the website entered a "Code Freeze." During a "Code Freeze," it is the responsibility of the programmers and developers (i.e., SoftwareHut) to look for any discrepancies in the code source and other stages of the development process. As a result of BestLaminate's experience with and concerns about the subpar quality of the work performed by SoftwareHut, BestLaminate also had its own team conduct final testing during the "Code Freeze." In connection with this testing, BestLaminate sent weekly reports with test results to SoftwareHut's team, so that they could fix the problems.

33. BestLaminate's team performed certain tests of the work that SoftwareHut had conducted. BestLaminate also retained two industry experts specializing in technical audits of pages like BestLaminate's website, to test the usability (front and backend), functionality (front and backend), customer experience, server setup, search engine optimization, and other aspects of the website, following SoftwareHut's work on the website.35. The audit conducted by the

industry experts revealed several major defects in SoftwareHut's work, including, but not limited to:

- Coding that violated Magento coding standards;
- The website did not adhere to industry standards;
- Pages on the website failed to perform;
- Features on the website did not work; and
- Unqualified personnel were assigned to the work.

34. The issues were so numerous that BestLaminate was forced to review with and/or provide a defects list to SoftwareHut on a regular basis.

35. In addition, it became necessary for the BestLaminate and SoftwareHut's project team to speak daily, and for BestLaminate and SoftwareHut's project management to speak weekly, in an attempt to address the myriad of problems and issues with the project.

36. It soon became apparent to BestLaminate that SoftwareHut's program did not have the basic functionality needed to meet critical requirements and/or cure critical and/or fatal defects.

37. SoftwareHut was aware of each of the defects and after weeks of attempts to cure them, nothing had been fixed.

38. SoftwareHut's work did not meet BestLaminate's most basic functionality requirements, and SoftwareHut was unable to perform its obligations under the MSA.

39. As a result of the above issues, SoftwareHut violated the parties' MSA by, *inter alia*, failing to provide deliverables to BestLaminate "in a timely, competent, professional, and workmanlike manner, using qualified Consultants."

40. As a result of SoftwareHut's breach of the parties' agreement and other misconduct, BestLaminate has been required to retain the services of another provider to conduct the work for which BestLaminate had originally retained SoftwareHut. As a result of

7

SoftwareHut's breach of the parties' agreement and other misconduct, BestLaminate is entitled to recover from SoftwareHut an amount in excess of $125,000, which includes the amount that it paid to SoftwareHut.

## COUNT I - BREACH OF CONTRACT

41. BestLaminate reiterates and incorporates by reference each of the preceding paragraphs as if fully restated herein.

42. The MSA and SOW 1 constitute valid contracts between the parties.

43. BestLaminate has complied in all material respects with its obligations under the contracts.

44. SoftwareHut breached the contracts by, *inter alia*, failing to provide satisfactory work for BestLaminate in a timely, competent, professional, and workmanlike manner, using qualified consultants.

45. SoftwareHut had no right under the contracts to request additional compensation to complete its work and remedy its unsatisfactory and deficient work. To the contrary, the contracts obligated SoftwareHut to perform its scheduled work as well as remedy any deficient work without additional compensation.

46. As a result of SoftwareHut's breaches, BestLaminate has suffered damages in an amount in excess of $125,000.

## COUNT II - UNJUST ENRICHMENT

47. BestLaminate reiterates and incorporates by reference each of the preceding paragraphs as if fully restated herein.

48. BestLaminate conferred a benefit upon SoftwareHut by paying SoftwareHut approximately $125,362.52 for SoftwareHut to conduct certain work. SoftwareHut is aware of the money it received from BestLaminate.

49. SoftwareHut has not performed the work for which BestLaminate paid SoftwareHut money.

50. SoftwareHut has been unjustly enriched by accepting and retaining the money it received from BestLaminate without conducting the work for BestLaminate. SoftwareHut's retention of the money paid by BestLaminate is unjust and inequitable.

51. SoftwareHut's unjust enrichment at BestLaminate's expense is without justification.

52. As a result, BestLaminate is entitled to damages in an amount in excess of $125,000.

### COUNT III - PROFESSIONAL NEGLIGENCE

53. BestLaminate reiterates and incorporates by reference each of the preceding paragraphs as if fully restated herein.

54. SoftwareHut owed BestLaminate a duty to act with the degree of knowledge and skill of members of its profession under like or similar circumstances (i.e. the standard of care).

55. SoftwareHut breached its standard of care and the duty it owed to BestLaminate by, *inter alia*, engaging in the conduct set forth above.

56. As a result of SoftwareHut's breach of the standard of care and its duty to BestLaminate, BestLaminate has and continues to suffer from significant damages, which has caused BestLaminate damages in excess of $125,000.

### COUNT IV - BREACH OF EXPRESS AND IMPLIED WARRANTIES

57. BestLaminate reiterates and incorporates by reference each of the preceding paragraphs as if fully restated herein.

58. SoftwareHut made express, implied, written and oral warranties to BestLaminate that SoftwareHut would provide high quality professional services as outlined in the contracts

9

and communicated to BestLaminate both in writing and orally. SoftwareHut breached these warranties by, *inter alia*, engaging in the conduct set forth above.

59. As demonstrated by the allegations herein, SoftwareHut has also breached the implied duty of good faith and fair dealing that it owed to BestLaminate under the contracts.

60. As a result of SoftwareHut's breach, BestLaminate has suffered damages in an amount to be determined at trial, including at least the amount BestLaminate has paid to SoftwareHut under the contracts.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BestLaminate respectfully prays for judgment against SoftwareHut in its favor as follows:

a. An award of damages in an amount to be determined at trial;

b. Pre- and post-judgment interest;

c. Reasonable costs and expenses incurred by BestLaminate in the prosecution of this action, including its reasonable attorneys' fees; and

d. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/*Daniel L. Messeloff*
Daniel L. Messeloff (0078900)
Melissa Z. Kelly (0077441)
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113
Tel:  (216) 696-5898
Fax:  (216) 592-5009
Email: Daniel.Messeloff@tuckerellis.com
           Melissa.Kelly@tuckerellis.com

*Attorneys for Plaintiff BestLaminate, Inc.*